James L. Bernard (admitted *pro hac vice*)
NY Attorney Registration No. 2766491
Stephanie A. Weathers-Lowin (admitted *pro hac vice*)
NY Attorney Registration No. 4783718
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane New York, NY 10038-4982
Tel: (212) 806-5400
Fax: (212) 806-6006
jbernard@stroock.com
sweatherslowin@stroock.com
*Attorneys for Defendant McKinsey & Company, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **L.P. CHAMP, et al.,**<br>**Plaintiffs,**<br>**v.**<br>**MICHAEL JUNG, et al.,**<br>**Defendants.** | **Case No. 16-cv-02168-PHX-ROS**<br><br>**MCKINSEY & COMPANY, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |

Defendant McKinsey[1] respectfully submits this reply memorandum of law in further support of its motion to dismiss this action on the ground of failure to state a claim upon which relief can be granted.

## ARGUMENT

### I. PLAINTIFFS' BREACH OF CONTRACT AND FRAUD CLAIMS ARE TIME-BARRED

Plaintiffs argue that their breach of contract and fraud claims are timely because the contract claim is governed by a six-year statute of limitations (under either New York or Arizona law), and that the fraud claim is also governed by a six-year statute of limitations

[1] Capitalized terms not defined herein have been defined in McKinsey's opening brief.

(under New York law). But under Arizona choice-of-law rules, and Arizona law, the contract claim is governed by a four-year statute of limitations and the fraud claim a three-year statute of limitations, and both claims are time-barred.

"In a diversity case, the district court must apply the choice-of-law rules of the state in which it sits." *Chacon v. Ohio State Life Insurance Co.*, No. 14-17505, 2017 WL 603856, at *1 (9th Cir. Feb. 15, 2017). Arizona applies the *Restatement (Second) of Conflict of Laws* ("Restatement") when analyzing conflict of laws issues. *Jackson v. Chandler*, 61 P.3d 17, 18 (Ariz. 2003).

Restatement section 142 specifically addresses conflicts between state statutes of limitations and thus applies here. *See Chacon*, 2017 WL 603856, at *1.[2] In *Jackson*, Arizona's Supreme Court held that, under section 142, the general rule "is very clear: as a starting point, the forum's statute of limitations applies. If a claim is barred in the forum it is rejected . . . ." 61 P.3d at 19 (emphasis added); *see also DeLoach v. Alfred*, 960 P.2d 628, 630 (Ariz. 1998) (applying section 142 to a cause of action that originated in Tennessee);

---

[2] Although the Nexim Contract contains a Swiss choice-of-law provision, and section 187 of the Restatement provides that a forum's law "chosen by the parties" should ordinarily prevail, this provision and this rule are not applicable here. (Compl. Ex. 2 p. 7 ¶ 9). McKinsey is not a party to the Nexim Contract, and therefore should not be forced to litigate in accordance with a choice-of-law provision it did not agree to, and Plaintiffs chose not to invoke Swiss law and instead to argue that New York law should apply. (Pls.' Resp. p. 6-10); *see Concannon v. Yewell,* 493 P.2d 122, 123 (Ariz. Ct. App. 1972) ("It is, of course, true that one party may waive any provision of a contract made for his benefit"); *Altela Inc. v. Arizona Sci. and Tech. Enterprises LLC*, CV-16-01762-PHX-DGC, 2016 WL 4539949, at *7 (D. Ariz. Aug. 31, 2016) (concluding, on motion to dismiss and to compel ADR, that defendant waived its right to compel mediation by engaging in conduct inconsistent with reliance on that right). Furthermore, Plaintiffs failed to invoke not only the Swiss choice-of-law provision, but also the Swiss arbitration provision. (Compl. Ex. 2 p. 7 ¶ 10). In an abundance of caution, despite not being a party to the Nexim Contract, McKinsey reserves the right to invoke the arbitration provision pending the Court's decision on the Motion to Dismiss.

*Atkins v. Calypso Systems, Inc.*, No. CV-14-02706-PHX-NVW, 2015 WL 5856881, at *9 (D. Ariz. Oct. 8, 2015) (applying Restatement section 142 to plaintiffs' fraud claim).[3] Accordingly, Arizona's statutes of limitations apply to all of Plaintiffs' claims.

**A. Plaintiffs' Breach of Contract Claim is Time-Barred**

Under the plain and unambiguous language of Ariz. Rev. Stat. § 12-544 (3), contracts executed outside the state of Arizona are subject to a four-year statute of limitations, which period begins to run at the time of breach. *See Beaudry Motor Co. v. New Pueblo Constructors*, 626 P.2d 1113, 1114-15 (Ariz. Ct. App. 1981). Here, the signature page of the Nexim Contract makes clear that it was executed in "Zurich, Vienna, Munich" on March 3, 2010, (Compl. Ex. 2 p. 8), a fact which Plaintiffs do not dispute. Because the Nexim Contract was executed outside of Arizona, Arizona's four-year statute of limitations applies. Plaintiffs admit that they "allege that McKinsey . . . breached the contract on July 3, 2010" (Pls.' Resp. p. 2 ¶ 3), as we made clear in our opening brief. *See* (McKinsey Mov. Mem. p. 5, 8-9). The last date by which Plaintiffs could have brought suit

---

[3] Plaintiffs argue that Arizona's choice-of-law analysis requires an "interests analysis," but this misstates the law. As the Arizona Supreme Court emphasized in *DeLoach*, "section 142 does not simply import the pure interest analysis of Section 6. Rather, revised section 142 begins with the <u>general rule</u> that the limitations period of the forum will apply, unless exceptional circumstances make such a result unreasonable . . . ." 960 P.2d at 630. According to the Ninth Circuit, "[a]t a minimum . . . exceptional circumstances must be 'out of the ordinary course,' 'unusual,' or 'special.'" *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1005 (9th Cir. 2006) (declining to engage in an interest analysis and finding, *inter alia*, that while the closure of international banks in countries experiencing extreme political or financial instability and civil war happens infrequently, it is neither "special nor out of the ordinary"). Plaintiffs do not allege anything close to what would be required to satisfy this "exceptional circumstance" standard, nor could they. Plaintiffs admit that they were on notice of Defendants' alleged breach of the Nexim Contract on July 3, 2010 (Pls.' Resp. p. 2 ¶ 3; Compl. ¶ 48), and likewise, for the reasons stated in our opening brief, Plaintiffs were also on notice of their alleged fraud claim as of July 3, 2010. Plaintiffs slept on their rights for nearly six years before filing their complaint on July 1, 2016.

was July 3, 2014. Plaintiffs filed their complaint on July 1, 2016, nearly two years after the applicable Arizona limitations period expired, and Plaintiffs' breach of contract claim should therefore be dismissed.

**B. Plaintiffs' Fraud Claim is Time-Barred**

Plaintiffs' fraud claim is also barred by the applicable Arizona limitations period. Ariz. Rev. Stat. § 12-543 (3) states that, "[t]here shall be commenced and prosecuted within three years after the cause of action accrues, and not afterward . . . relief on the ground of fraud . . . which cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud . . . ." *See Coronado Dev. Corp. v. Super. Ct. of Arizona In and For Cochise Cty.,* 678 P.2d 535, 537 (Ariz. Ct. App. 1984).

The alleged series of events that give rise to Plaintiffs' breach of contract claim, and which allegedly caused Plaintiffs to lose control of the Visoka oil field, are the same events that put Plaintiffs on notice of the alleged fraud. Namely, that on July 3, 2010, Meroni wrote a letter to the US Embassy in Albania ordering the ouster of Champ and Ammerman as Directors of Visoka, after which Plaintiffs were accosted at gun point by Albanian mafia – who told Plaintiffs they had been hired by Jung and Meroni – subjected to death threats, injured, had $40,000 worth of personal funds stolen, and were blocked from accessing Visoka's bank accounts, which had been frozen. (Compl. ¶ 49). All of this put, or reasonably should have put, Plaintiffs on notice that they had been defrauded of their ownership interest in the Visoka oil field.

In response, Plaintiffs claim that they did not discover the fraud until 2012, (Pls.' Resp. pp. 2-3 ¶ 4), when they were allegedly supplied with "documents and conversations"

that evidenced the "takeover" (Compl. ¶ 54).[4] The allegations in the Complaint, however, plead facts which, at a minimum, demonstrate that Plaintiffs were on notice as of July 3, 2010, when they were allegedly violently and physically ousted at gun point from Albania pursuant to orders from Jung and Meroni. In Arizona, the statute of limitations in a fraud case begins to run when a plaintiff by reasonable diligence could have learned of a fraud, whether or not a plaintiff actually learned of it. *Coronado,* 678 P.2d at 537 ("The statute of limitations in a fraud case begins to run when the plaintiff by reasonable diligence could have learned of the fraud, whether or not he actually learned of it."). It therefore does not matter when Plaintiffs claim they actually learned of the alleged fraud (even accepting their argument at face value on this motion) because the earlier-in-time facts they plead – their ouster from their directorships, the freezing of their company's bank account and theft of funds therefrom and the physical threats of force and resulting injuries against them – should have put them on notice that they had been defrauded. The claims Plaintiffs make in paragraph 49 of their complaint would have put any reasonable person on notice that they had been defrauded. They should therefore be charged with that notice as of July 3, 2010, and the fraud claim against McKinsey should be dismissed because Plaintiffs did not file their complaint until July 1, 2016, nearly three years after the statute of limitations expired.

Finally, even if we ignore the activity in 2010, Plaintiffs concede they were on notice of the alleged fraudulent conduct no later than January 2012. (Pls.' Resp. pp. 2-3 ¶ 4; Compl. ¶ 54). Even this date puts them well outside the statute of limitations, which

---

[4] In paragraph 54 of the Complaint, Plaintiffs allege they were supplied with evidence of the "takeover" in January 2012. For the reasons discussed below, Plaintiffs should be charged with notice as of January 3, 2010.

expired as of January 2015, more than one and a half years before they filed their Complaint in July 2016.

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT BECAUSE MCKINSEY IS NOT A PARTY TO THE NEXIM CONTRACT

The statute of limitations argument set forth above is dispositive of Plaintiffs' claims and therefore, if the Court agrees, the following lack of privity argument need not be addressed.

### A. Plaintiffs Fail to Plead that Jung was McKinsey's Actual Agent

McKinsey did not sign the Nexim Contract, there is no mention of McKinsey in the Nexim Contract and it is simply not plausible that a contract to exploit an oil field in Albania was entered into for McKinsey's benefit, particularly when the contract never mentions McKinsey. *See Morales v. Forster & Garbus, LLP*, No. CV10-1464-PHX-JAT, 2012 WL 78630, at *2 (D. Ariz. Jan. 11, 2012) ("[A] complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is 'plausible on its face'"). McKinsey is a global management consulting firm that provides consulting advice to leading businesses, governments, non-governmental organizations, and not-for-profits. *See* (Compl. ¶ 10). McKinsey is not an investment firm or private equity fund; it is not in the business of investing in oil fields. The conclusory allegations that the Nexim Contract was entered into for McKinsey's benefit are wholly implausible and should be disregarded.[5]

[5] While McKinsey understands that a court faced with a complaint from pro se plaintiffs must construe it liberally, "even pro se litigants are held to the requirements of the federal and local rules, and a failure to appropriately follow those rules may result in . . . dismissal." *Allen v. Quest Online, LLC*, No. CV-11-138-PHX-GMS, 2011 WL 4403674, at *2 (D. Ariz. Sept. 22, 2011). We also note that while Plaintiffs have held themselves out as appearing pro se, it appears they are being advised by counsel. *See* (Pls.' Resp. pp. 3-4, language in bold referring to converting this motion into a Rule 56 motion if Plaintiffs

Plaintiffs seek to avoid this fundamental problem by claiming that Jung was McKinsey's actual agent for purposes of entering into the Nexim Contract. (Pls.' Resp. pp. 4-5). Plaintiffs base this argument on their allegations that, at the time the Nexim Contract was executed, Jung was a McKinsey employee. *See, e.g.*, (Compl. ¶ 2) ("[Jung] was a Director and employee of McKinsey & Company . . . [and] *was therefore McKinsey's actual (or ostensible) agent* . . . ." (emphasis added). But the doctrine of *respondeat superior*, which holds an employer liable for the torts of an employee committed within the scope of employment, is not available in contract claims. In *Allen,* 2011 WL 4403674, at *4, the court explained that breach of contract claims premised on a *respondeat superior* theory of liability failed "because that theory only exists in the context of tort claims, not breach of contract actions."

Furthermore, Plaintiffs should not be permitted to shoehorn a meritless *respondeat superior* claim into a concocted claim of actual agency. Under Arizona law, Jung was not McKinsey's agent for purposes of entering into this oil development contract. *See Patterson v. Home Depot, USA Inc.*, 684 F. Supp. 2d. 1170, 1180 (D. Ariz. 2010) (explaining that when a court sits in diversity, it first looks to state law to determine whether an agency relationship was formed). "[T]o create an agency relationship, there must be a manifestation of consent by the alleged principal to the alleged agent that the agent shall act on his behalf and subject to his control and consent by the agent to act on behalf of the principal and subject to his control." *Dawson v. Withycombe*, 163 P.3d 1034, 1050 (Ariz. Ct. App. 2007); *Bank of America, et al., v. Barnett*, 348 P.2d 296, 299 (Ariz. 1960) ("The rule is well established, not only in this state but elsewhere, that the

---

submit declarations).

declaration[s] of an alleged agent are not evidence of the fact of agency . . . . The agency must be proved by other evidence before his (the agent's) acts and statements can be shown against the principal . . . . The rule applies equally to oral statements of the agent . . . .") (emphasis added).[6]

Here, Plaintiffs do not plead any manifestation of consent by McKinsey to Jung that Jung had authority to enter into the Nexim Contract, nor do Plaintiffs plead that Jung agreed to do so on McKinsey's behalf and subject to McKinsey's control. Each of the paragraphs in the Complaint which Plaintiffs rely upon for the claim that Jung was acting as McKinsey's actual agent (Pls.' Resp. p. 5), all merely refer to claimed representations or conduct by Jung or the conclusory, and therefore insufficient for pleading purposes, characterization of "Jung/McKinsey" or "Jung and McKinsey."[7] An example proves the point:

> Jung represented that he was employed by McKinsey as a Director and [Jung] provided Champ and Ammerman with his business card on which it stated: 'Michael Jung, Director, McKinsey & Company . . . . Jung advised Hertel, Champ and Ammerman that he and McKinsey were very interested in becoming part owners in this company . . . Jung assured Champ and

---

[6] Plaintiffs claim that Jung provided them with his McKinsey business card (Compl. ¶ 9), that documents were prepared using a McKinsey format (*id*. ¶ 9), and that Jung used his McKinsey email account at times to communicate with them (*id*. ¶¶ 39, 41). Following the Arizona Supreme Court's decision in *Bank of America,* statements by an agent are not, as a matter of law, sufficient to create an actual agency. There are also no facts alleged that amount to a statement by McKinsey to Plaintiffs that Jung had the actual authority to enter into the Nexim Contract on McKinsey's behalf.

[7] Statements like the ones contained in paragraph 11 of Plaintiffs' Complaint: "Jung and McKinsey began their work as 10% partners/owners in Visoka . . . ."; "Jung and McKinsey prepared the document for submission to investors . . . ."; and "The Investment Offering was then submitted by Jung and McKinsey to potential investors . . . ." are implausible and conclusory statements without any factual support, and should be disregarded in assessing whether Plaintiffs satisfied their pleading requirement. *See Morales,* 2012 WL 78630, at *2 ("Rule 8's pleading standard demands more than an unadorned, the-defendant unlawfully-harmed-me accusation").

> Ammerman of McKinsey's capabilities . . . Jung represented further to Champ, Ammerman and Hertel that McKinsey would provide its services . . . . Jung's/McKinsey's role for being responsible for and in locating financing for Visoka . . . .

(Compl. ¶ 9) (emphasis added). Although Plaintiffs also refer to statements allegedly made by Jean Molino (the General Counsel of McKinsey), those alleged statements were never made by Ms. Molino to Plaintiffs, but rather are examples of alleged statements that Jung supposedly relayed to Plaintiffs. *See, e.g.*, (Compl. ¶ 25) ("Despite the fact the head of the McKinsey New York Home Office Legal Department, Molino, told the Director [Jung] that 'her advice is clear: there must be NO connection to McK or to McK leaders' . . . .") (emphasis added). This failure to plead any manifestation of consent by McKinsey to Jung is fatal to Plaintiffs' claim that Jung had actual authority to enter into the Nexim Contract on McKinsey's behalf.

**B. Plaintiffs Fail to Plead that Jung was McKinsey's Apparent Agent**

Plaintiffs also fail to plead that Jung was McKinsey's apparent/ostensible agent for purposes of entering into the Nexim Contract. (Pls.' Resp. pp. 5-6). "[A]pparent authority exists when the principal has intentionally or inadvertently induced third persons to believe that such a person was its agent although no actual or express authority was conferred on him as agent." *Patterson,* 684 F. Supp. 2d. at 1181 (emphasis added). Like actual authority,

> [a]pparent authority can never be derived from the acts of the agent alone. Instead, when dealing with apparent authority, the emphasis shifts to the third party's reliance on the acts of the alleged principal and the agent as opposed to any express or implied grant by the principal. Consequently, in order to establish apparent authority the record must reflect that the alleged principal not only represented another as his agent, but that the person who relied on the manifestation was reasonably justified in doing so under the facts of the case.

*Reed v. Gershweir*, 772 P.2d 26, 28 (Ariz. Ct. App. 1989) (emphasis added). "Significantly, the principal must make some manifestation to the third party which could reasonably be relied upon to indicate that the agent had the alleged authority." *Max of Switzerland, Inc. v. Allright Corp. of Delaware*, 930 P.2d 1010, 1014 (Ariz. Ct. App. 1997) (emphasis added); *see also Hudlow v. American Estate Life Ins. Co.*, 526 P.2d 770, 772 (Ariz. Ct. App. 1974); *Patterson*, 684 F. Supp. 2d. at 1181.

Here, Plaintiffs fail to plead any manifestation by McKinsey to Plaintiffs which could reasonably be relied upon and which indicated that Jung had authority to enter into the Nexim Contract on McKinsey's behalf. Most fundamentally, the face of the contract shows no indication by McKinsey or Jung that Jung was acting on behalf of McKinsey. The contract clearly shows all of the entities on whose behalf the signatories were acting. In the case of Jung, the entities for which he is signing are explicitly set forth on the face of the document as CJ Ministries and Viktoriastrasse 9 GmbH. (Compl. Ex. 2 p. 8). Moreover, none of the paragraphs in the Complaint to which Plaintiffs refer in their Response include a manifestation by McKinsey to Plaintiffs, rather each refers to claimed representations or conduct by Jung, or conclusory and insufficient characterizations like "Jung/McKinsey" or "Jung and McKinsey:"

- Compl. ¶ 18 – "Jung repeatedly represented to the investors that he was a Director of McKinsey and that he and McKinsey were principals in Visoka";
- Compl. ¶ 21 – "Despite Jung's, and therefore McKinsey's, knowledge of all of these facts concerning Hertel's fraud . . . ."; and

Plaintiffs failure to plead any manifestation by McKinsey to Plaintiffs that Jung had authority to enter into the Nexim Contract precludes Plaintiffs' assertion that Jung entered

into the Nexim Contract on McKinsey's behalf. *See*, *e.g., Max of Switzerland, Inc.,* 930 P.2d at 1014.

## III. PLAINTIFFS FAIL TO STATE A CLAIM FOR CIVIL CONSPIRACY BECAUSE THEY FAIL TO PLEAD AN ACTIONABLE UNDERLYING TORT

Because Plaintiffs' fraud claim is barred by the statute of limitations, they have failed to plead an actionable tort that could be considered the underlying act of the alleged civil conspiracy. *See Diaz v. Arizona*, No. CV 11-02337-PHX-FJM , 2012 WL 1203692, at *2, *5, (D. Ariz. Apr. 11, 2012), *aff'd*, 555 Fed. Appx. 698 (9th Cir. 2014) (holding that plaintiffs' claim for civil conspiracy failed as a matter of law where the underlying tort was barred by the statute of limitations). Therefore, Plaintiffs' claim for civil conspiracy fails as a matter of law.

## CONCLUSION

For the reasons set forth above, as well as those set forth in McKinsey's opening brief, the Court should dismiss all of Plaintiffs' claims with prejudice.

Respectfully Submitted,

**STROOCK & STROOCK & LAVAN LLP**

*/s/* James Bernard

James L. Bernard (admitted *pro hac vice*)
Stephanie A. Weathers-Lowin (admitted *pro hac vice*)
180 Maiden Lane, New York, NY 10038-4982
Tel: (212) 806-5400
jbernard@stroock.com
sweatherslowin@stroock.com
*Attorneys for Defendant McKinsey & Company, Inc.*

James L. Bernard (admitted *pro hac vice*)
NY Attorney Registration No. 2766491
Stephanie A. Weathers-Lowin (admitted *pro hac vice*)
NY Attorney Registration No. 4783718
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane, New York, NY 10038-4982
Tel: (212) 806-5400
Fax: (212) 806-6006
jbernard@stroock.com
sweatherslowin@stroock.com
*Attorneys for Defendant*
*McKinsey & Company, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **L.P. CHAMP, et al.,**<br>**Plaintiffs,**<br>**v.**<br>**MICHAEL JUNG, et al.,**<br>**Defendants.** | **Case No. 16-cv-02168-PHX-ROS**<br><br>**<u>CERTIFICATE OF SERVICE</u>** |

I hereby certify that on March 8, 2017, I electronically filed a copy of the foregoing McKinsey & Company, Inc.'s Reply Memorandum in Further Support of its Motion to Dismiss with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

/s/ James Bernard